UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARA GURULE | ) | CASE NO.  5:15CV278 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **AMENDED** |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM AND OPINION** |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Cara Gurule Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his July 16, 2013 decision in finding that Plaintiff was not disabled because the Medical Vocational Rules supports the finding that claimant is not disabled (Tr. 40-53).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.    PROCEDURAL HISTORY**

Plaintiff, Cara Gurule, filed her application for DIB and SSI on November 22, 2011,  alleging she became disabled on September 22, 2011 (Tr. 40-53).  Plaintiff's application was denied initially and on reconsideration (Tr. 164, 168, 172, 175).  Plaintiff requested a hearing before an ALJ, and,

1

on June 4, 2012, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, along with Robert Mosley, a vocational expert (Tr. 76-108).

On July 16, 2013, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 40-53). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c).

## II. STATEMENT OF FACTS

Plaintiff was born on May 2, 1990, which made her twenty-three years old at the time of the hearing (Tr. 51). Plaintiff is a high school graduate and has state-tested nurses aide training (Tr. 235). She has past relevant work experience as a nurses aide and a sales clerk (Tr. 244, 279).

## III. SUMMARY OF MEDICAL EVIDENCE

The 2011 medical records dated before Plaintiff's alleged onset date reflect active treatment for severe hand eczema, with Plaintiff's subjective reports of burning, loss of sensation, and severe itching for approximately two years. Plaintiff also reported occasional right hip pain (Tr. 206-303, 407, 409-410). Treating dermatologist Julie Mark, M.D. observed cracked, thickened, scaly skin on both hands (Tr. 297, 300, 303).

In September 2011, treating rheumatologist Rachel Waldman, M.D. observed right finger tenderness, decreased range of motion of the right hip, and scaling and cracking of both palms with greater symptoms observed on the right hand (Tr. 308, 310). Remaining neurological and musculoskeletal findings were generally normal (Tr. 311). Dr. Waldman assessed psoriatic arthritis,

and initiated methotrexate treatment (Tr. 308).  Plaintiff reported smoking eleven to twenty cigarettes per day. *Id.*  Right hip and right hand x-rays performed later that month were unremarkable (Tr. 286-287).

In October 2011, Dr. Mark assessed severe psoriasis with extensive scaling and fissuring of several fingers, finger swelling, and extensive dystrophy of several fingernails (Tr. 294-295).  Dr. Mark surmised "extensive/severe" systemic disease due to Plaintiff's reports of intense joint pain of the hip and hand (Tr. 294).  Dr. Mark indicated improvement since Plaintiff's last visit. *Id.*  Plaintiff reported smoking six to ten cigarettes per day (Tr. 293).

Later that month, Plaintiff complained of pain of the back and right hip, with worsening skin lesions on the right hand (Tr. 315).  However, she reported that her fatigue and general well-being had improved with the initial course of methotrexate treatment (Tr. 314-315).  Dr. Waldman observed right hand symptoms of tenderness, mild fullness, thickness, scaling, and fissuring, as well as a healing rash on the back (Tr. 315-316).  However, other than limited range of motion of the right hip and observation of a left knee tender point, remaining examination findings were generally normal, including normal range of motion of the hands and wrists bilaterally with normal reflexes and no synovitis. *Id.*  Dr. Waldman noted that lab testing was normal, and that right hip x-rays showed a shallow socket, but were otherwise unremarkable (Tr. 316).  Plaintiff reported smoking six to ten cigarettes per day (Tr. 317).

In December 2011, Plaintiff reported further improvement with methotrexate treatment, though she complained of some gastrointestinal intolerance; Dr. Waldman decreased the methotrexate dose and added Enbrel to the treatment regimen (Tr. 317-328).  Plaintiff reported experiencing some hand swelling and tightness of almost all fingers, with difficulty opening her hands, in November (Tr. 318).  Plaintiff also complained of bilateral foot numbness with prolonged sitting or standing; she

3

indicated that she had to wear slippers to work. *Id.* Dr. Waldman observed that Plaintiff's back rash was "much improved" with medication and tanning. *Id.* Dr. Waldman noted bilateral hand tenderness and mild fullness, flexion contracture of the right fifth finger, and other positive signs of the hands (right greater than left) (Tr. 318). Remaining neurological and musculoskeletal findings were generally normal, including normal range of motion of the hips, hands, and wrists without synovitis. *Id.* Plaintiff again reported smoking six to ten cigarettes per day (Tr. 317).

In January 2012, state agency reviewing physician Anne Prosperi, D.O. opined that Plaintiff: (a) could left twenty pounds occasionally and ten pounds frequently; (b) could stand/walk for about six hours in an eight-hour workday; (c) could sit for about six hours in an eight-hour workday; (d) could frequently push, pull, operate controls, handle, and finger with the hands bilaterally; (e) could frequently kneel, crouch, crawl, and climb ramps or stairs; (f) could occasionally climb ladders, ropes, or scaffolds; and (g) should avoid concentrated exposure to water environments, including occlusive plastic gloves or harsh soaps/detergents (Tr. 114-116), 125-127). State agency reviewing physician Elaine Lewis, M.D. generally affirmed Dr. Prosperi's assessments in April 2012, except Dr. Lewis assessed that Plaintiff could never climb ladders, ropes, or scaffolds (Tr. 139-141, 151-153).

Plaintiff complained of fatigue to treating physician Nicholas Strange, D.O. in February 2012 (Tr. 404). Dr. Strange attributed the fatigue to Plaintiff's admission of nightly awakenings to binge eat (Tr. 405).

At the next visit with Dr. Walden in March 2012, Plaintiff reported intermittent right elbow pain, occasional cramping and numbness of the left toes, and left ring finger pain (Tr. 341). Plaintiff complained of decreased appetite; Dr. Waldman, therefore, decreased the methotrexate dosage. *Id.* Plaintiff advised that she quit working. *Id.* On examination, Dr. Waldman noted mild lumbar tenderness, and other positive signs of the wrists. *Id.* Remaining neurological and musculoskeletal

4

findings were generally normal, including normal range of motion of the hips, hands, and wrists (Tr. 341-342). Dr. Waldman also observed that the skin on Plaintiff's hands was much improved, and that the scaling and fissuring were almost clear (Tr. 342). Plaintiff reported smoking six to ten cigarettes per day (Tr. 340). X-rays of the left foot and left ring finger performed later that month were unremarkable 9Tr. 357-358, 363-364).

In April 2012, Plaintiff reported a return of her hand rash and eczema symptoms with the decrease in methotrexate dosage (Tr. 343). Plaintiff reported that she attempted to wear gloves to prevent scratching, but it caused her hands to sweat and itch even more. *Id.* Dr. Waldman observed mild lumbar tenderness, increased right hand irritation and cracking, as well as a small patch of thickened skin of a left finger (Tr. 344-345). Otherwise, remaining examination findings were generally normal, including normal range of motion of the hips, hands, and wrists without synovitis (Tr. 344). Plaintiff reported smoking six to ten cigarettes per day (Tr. 343). An EMG study of the left lower extremity performed later that month was normal (Tr. 356).

In June 2012, Plaintiff complained of low back and bilateral hip pain (Tr. 347). Plaintiff demonstrated decreased range of motion of the right hip with other positive signs of the hips bilaterally. *Id.* Otherwise, examination findings were generally normal, including hand and wrist findings (Tr. 347-348). Dr. Walden noted that the eczema symptoms present at the April 2012 visit had improved with the use of topical medications provided by Dr. Mark. *Id.* Lumbar x-rays performed later that month revealed mild diffuse loss of disc space, but no acute findings (Tr. 354). Concurrent x-rays of the hips showed only mild degenerative changes of the left hip, right hip findings were unremarkable (Tr. 355, 359).

In July 2012, Plaintiff saw orthopedist Presanna Soni, M.D. for bilateral hip pain (Tr. 417). On examination, Dr. Soni noted tenderness, decreased muscle tone, and limited range of motion of

5

the hips bilaterally (Tr. 418). However, Dr. Soni also observed generally intact strength of both the upper and lower extremities, with no obvious instability of the hips. *Id.* Dr. Soni recommended home stretching exercises, with follow-up only if the condition worsened (Tr. 419). Dr. Soni also counseled Plaintiff on quitting smoking (Tr. 417).

In August 2012, Plaintiff withdrew from aquatic therapy, citing pain (Tr. 458). Therapy discharge paperwork reflects that Plaintiff previously cancelled three visits, and was a "no show" for one visit (Tr. 458).

In September 2012, Plaintiff visited pain management specialist Atef Wasef, M.D. (Tr. 420-421). Dr. Wasef observed positive right hip tenderness and mild lumbar tenderness; he also noted normal lumbar range of motion with negative straight leg raising (Tr. 421). Dr. Wasef assessed symptoms of sciatic arthritis of the right hip with lesser involvement of the left hip and low back. *Id.* Dr. Wasef prescribed Vicodin for pain relief. *Id.*

February 2013 treatment records from Dr. Walden reflected improvement in eczema symptoms with resolution of psoriasis of the hands (Tr. 459-460). Plaintiff reported ongoing hip pain, but that Enbrel and methotrexate were working well for small joint pain and skin issues (Tr. 460). Dr. Walden observed mild lumbar tenderness, as well as decreased and painful range of motion of the hips (Tr. 460-461). Remaining examination signs were generally normal, including normal hand and wrist findings. *Id.*

A right hip MRI, performed in April 2013, revealed an acetabular tear and cyst (Tr. 464).

### **IV.    SUMMARY OF TESTIMONY**

At the administrative hearing, Plaintiff testified that she has difficulty grasping and lifting objects, and that her hands cramped severely when she washed dishes or combed her hair (Tr. 85, 99).

She also expressed difficulty manipulating small items such as tweezers (Tr. 85). Plaintiff testified that during a right hand flare, she experienced "terrible" itching and burning, stiffness and contraction of her fingers, and psoriatic scales on the palm that left open wounds (Tr. 85-86). Plaintiff testified that during a flare, she was unable to wash her hands frequently, as was required when she worked as a nursing assistant (Tr. 90). She also indicated that gloves also irritated her hands (Tr. 91). Plaintiff testified that her most recent flare occurred approximately two weeks prior to the hearing, after running out of her medication; she characterized the flare as "mild" (Tr. 86). She also indicated that had been the first flare-up she had experienced in "a while," as the treatment combination of Enbrel and methotrexate worked well to control her symptoms (Tr. 86-87). She endorsed medication and treatment side effects of fatigue and itching (Tr. 96).

Plaintiff testified that, although she stopped experiencing as many flares with the medication, she still experienced a reaction in her skin if she were anxious or having a bad day (Tr. 89). She also indicated that she was prone to skin irritation if her hand came into contact with certain things, such as plastic or water (Tr. 89, 91).

Plaintiff testified that she also experienced arthritis throughout her body that caused fatigue, chronic joint stiffness, foot numbness, and joint tightening, particularly in her ankles and elbows (Tr. 91). Plaintiff testified that she experienced chronic bilateral hip pain that impaired her ability to change positions (Tr. 93, 97). She stated that she also experienced extreme hip pain prior to rainy weather (Tr. 97).

Functionally, Plaintiff indicated that she could lift no more than ten pounds, stand for less than fifteen minutes, and not sit for prolonged periods (Tr. 94). Plaintiff testified that her daily routine included caring for her son and keeping the house clean and organized; however, she indicated that it takes her longer to perform housework (Tr. 84-85). Plaintiff stated that she received assistance with

household and yard work from family members that lived nearby (Tr. 92, 98).

Plaintiff testified that she smokes one half-pack of cigarettes per day (Tr. 95).

Plaintiff testified that she worked as a nursing assistant from 2009 through January 2012, when she quit because the job became "too stressful," as her medication lowered her immune system, and she was working with patients who were tuberculosis carriers (Tr. 81-83, 88).

Thereafter, the VE identified, in response to a hypothetical question from the ALJ based on Plaintiff's credible limitations, representative jobs of cashier, surveillance system monitor, and final assembler (Tr.101).

## **V.** **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other

> factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole.

*See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.  ANALYSIS**

Plaintiff asserts two assignments of error:

I.  WHETHER THE ALJ'S DETERMINATION THAT PLAINTIFF'S PSORIATIC ARTHRITIS DOES NOT MEET OR EQUAL LISTING 14.09B IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

II.  WHETHER THE ALJ'S FINDING THAT PLAINTIFF'S STATEMENTS REGARDING HER SYMPTOMS WERE NOT ENTIRELY CREDIBLE WAS BASED UPON THE APPROPRIATE STANDARDS AND SUPPORTED BY THE SUBSTANTIAL EVIDENCE. (Pl. Br. 8-15).

However, the undersigned is of the opinion that the ALJ reasonably concluded that Plaintiff was not disabled because, despite her impairments, she could perform work existing in significant numbers in the local and national economies. A review of the record, decision, and authorities supports the ALJ's decision based upon substantial evidence.

Plaintiff first argues that the ALJ erred by not finding that Plaintiff's arthritis impairments met or medically equaled the listing for *Inflammatory Arthritis,* listing 14.09(B) (Pl. Br. 8-11). Listing 14.09(B) requires demonstration of arthritis (as described in Section 14.00(D))) causing inflammation or deformity in one or more major peripheral joints with: (1) involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). 20 C.F.R. Pt. 404, Subpt. P, App. 1 Section 14.09(B).

Plaintiff argues that the ALJ failed to address equivalency with regards to listing 14.09(B) (Pl. Br. 9-10). However, the undersigned concludes that the ALJ correctly found that Plaintiff did not have

10

"an impairment or combination of impairments that [met] or medically equal[ed] a listed impairment" (Tr. 47). In addition, the ALJ correctly found that no treating or examining physician had indicated findings that would satisfy the severity requirements of any listed impairment. *Id.* And the ALJ indicated that he considered the state agency opinions that concluded that none of Plaintiff's impairments met or medically equaled a listed impairment. *Id.*

The ALJ correctly considered and analyzed whether the criteria of listing 14.09 were met in this case. *Id.* The ALJ concluded that the criteria of Section 14.09B were not met because Plaintiff did not demonstrate "inflammation or deformity in a peripheral joint with involvement of two or more organs/body systems with one of at least moderate severity in addition to at least two of the following: severe fatigue, fever, malaise, or involuntary weight loss." *Id.*

Plaintiff has the burden of proving that she met or medically equaled a listing, and she did not meet her burden here. *See*, 20 C.F.R. Sections 404.1512(a), 404.1520(a)(4)(i)-(iv) (noting that claimant bears the burden of production at steps one through four); *Lusk v. Comm'r of Soc. Sec.*, 106 F.App'x 405, 411 (6th Cir. 2004). Under subparagraph (1) of listing 14.09(B), Plaintiff must show "involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity." Plaintiff's references to her "skin, back, fingers, and right hip" fail to show "involvement of other organs/body systems," as described by Section 14.00(D)(6)(e)(iii) (Pl. Br. 9). If Plaintiff had shown the requisite involvement of her "skin, back, fingers, and right hip," she has not shown involvement "to at least a moderate level of severity," as also required under Section 14.09(B)(1). *See, Vidot v. Colvin*, No. 1:14CV1343, 2015 WL 3824360, at *7-8 (N.D. Ohio June 18, 2015). *See, also, Driver v. Astrue*, No, 2:08-0001, 2010 WL 6826618, at *14 (M.D. Tenn. Dec. 29, 2010) report and recommendation adopted, No. 2:08-CV-0001, 2011 WL 2600882 (M.D. Tenn. June 30, 2011) (diagnoses of mild degenerative disc disease and chronic obstructive pulmonary

disease insufficient to establish requisite extra-articular features under listing 14.09 where the conditions did not reach the level of severity of extra-articular features described in 14.00D6e(iii).

Plaintiff also has not met the criteria of Section 14.09(B)(2), which requires demonstration that her arthritis condition resulted in at least two constitutional signs and symptoms (such as severe fatigue, fever, malaise, or involuntary weight loss). Plaintiff states that "[t]he record demonstrates Plaintiff has experienced fatigue, malaise, *or* involuntary weight loss" (emphasis added) (Pl. Br. 9). Such a statement without support also does not satisfy Plaintiff's burden that she met or medically equaled the criteria of the listing. *See, Thacker v. Soc. Sec. Admin.*, 93 F.App'x 725, 728 (6th Cir. 2004).

While the record does indicate some complaints of fatigue and weight loss, Plaintiff has not established that these symptoms were the result of her psoriatic arthritis. Actually, Plaintiff alleged that her loss of appetite resulting in weight loss was a side effect of the methotrexate treatment (Tr. 86-87, 341). Once Dr. Waldman adjusted the methotrexate dosage, Plaintiff confirmed that her appetite returned, with no further evidence of weight loss during the period at issue (Tr. 344). Hence, Plaintiff's argument that her weight loss was a symptom of her arthritis condition, is not supported by the evidence. Furthermore, Plaintiff has not proven "severe fatigue," as required by Section 14.09(B)(2). Section 14.00(C)(5) defines "severe fatigue" as "a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." Here, the record indicates Plaintiff's isolated report of fatigue in September 2011 (Tr. 309). Plaintiff subsequently reported that her fatigue and general well-being improved with the initial course of methotrexate treatment in October 2011 (Tr. 314-315). Since October 2011, Dr. Walden noted Plaintiff's lack of fatigue in the treatment notes (Tr. 318, 337, 341, 346). Although Plaintiff complained of fatigue to treating physician Nicholas Strange, D.O. in February 2012, Dr. Strange correctly concluded that the fatigue

12

was due to Plaintiff's admission of nightly awakenings to binge eat (Tr. 405).

In addition, Section 14.00(C)(5) defines "malaise" as "frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Plaintiff, again, did not sustain her burden of proof. As the ALJ indicated, Plaintiff was physically and mentally able to care for her young son throughout the period at issue, and she worked through February 2012 in a position classified by the vocational expert as having medium exertional requirements (Tr. 46-47, 49, 279). In his decision, the ALJ found decreased range of motion of the hips and mild lumbar tenderness. However, he also concluded that physical examinations of record generally did not yield significantly abnormal findings (Tr. 47-50, 311, 315-317, 341-342, 344, 347-348, 418, 460). Furthermore, the ALJ noted that objective records generally showed improvement in symptoms with medications and treatment (Tr. 49, 318, 342, 347-350).

The ALJ's findings are supported by substantial evidence. *See, Vidot*, 2015 WL 3824360 at *7-8 ("Under the substantial evidence standard, it is immaterial whether there is evidence of record capable of supporting a finding that the listing was satisfied. An administrative decision is not subject to reversal merely because substantial evidence could have supported such findings or because *Vidot* proffers a different interpretation of the evidence.").

Plaintiff also argues that the ALJ erred by not calling a medical expert to testify regarding whether Plaintiff met or medically equaled listing 14.09(B). However, while an ALJ has the duty to develop the record, he has discretion to determine whether additional evidence is necessary. *See,* 20 C.F.R. Sections 404.1512(d); 416.912(d); *Ferguson v. Com'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *see, also, Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2011) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."). Here, the ALJ correctly determined that the record contained sufficient evidence to determine Plaintiff's RFC and whether she met or equaled listing 14.09 without medical expert testimony. *See,*

13

*Simpson v. Comm'r of Soc. Sec.*, 344 F.App'x 181, 189 (6th Cir. 2009). *See, also, Williams v. Callahan*, 149 F.3d 1185, at *4 n3 (6th Cir. 1998).

Furthermore, even though Plaintiff also argues that the Agency had a duty to solicit expert medical testimony regarding her recurrent abscesses and the resulting limitations on her ability to work, the ALJ correctly determined that the record contained substantial evidence to decide her disability.

In addition, the ALJ relied on the state agency opinions that Plaintiff did not meet or equal any listed impairment (Tr. 47). *See, Filus v. Astrue*, 694 F.3d 863, 867; *Flener v. Barnhart*, 361 F.3d 442, 447-48. As indicated by the ALJ, the state agency opinions were not contradicted by any treating source or other opinion evidence (Tr. 50).

Plaintiff argues that medical expert testimony was needed in this case because the state agency reviewing physicians did not have an opportunity to review medical evidence submitted at the hearing level (Pl. Br. 11). However, the record shows that the ALJ reviewed the entire medical record, including the exhibits to which the state agency physicians lacked access. Hence, any deficiency in the state agency physicians' opinions was corrected by the ALJ's review of the record, as indicated by the ALJ's determination of even greater exertional limitations than assigned by the state agency physicians. *See,* 20 C.F.R. Section 404.1527(e)(2); *see, also, Kelly v. Comm'r of Soc. Sec.*, 314 F.App'x 827, 831 (6th Cir. 2009).

The ALJ provided a basis for his credibility finding based upon substantial evidence. First, the ALJ did not totally discount Plaintiff's testimony regarding how her symptoms affected her ability to perform certain activities, as shown by the ALJ's limitation to sedentary work. The ALJ's limitation to sedentary work is consistent with Plaintiff's allegations of chronic hip pain, as well as her testimony that she could lift a maximum of ten pounds (Tr. 47, 94). In addition, the ALJ assessed a range of non-exertional limitations that accommodated Plaintiff's complaints of increased psoriatic

14

hand flares with excessive exposure to wetness or other irritants (Tr. 47).

Furthermore, the ALJ considered Plaintiff's hearing testimony, including her allegations of chronic limb cramping, joint stiffness, back pain, hip pain, and psoriatic flares of her hands causing itching, burning, dryness, cracking, and a decreased ability to perform manipulative tasks (Tr. 48). In addition, the ALJ considered objective findings in the medical record of multiple psoriatic hand flares, muscle spasms, right hip tenderness; the ALJ also considered diagnostic imaging showing mild degenerative changes of the left hip and an acetabular tear and cyst of the right hip (Tr. 48-49).

The ALJ also considered other clinical findings weighing against a finding of debilitating pain and symptoms. Though treatment records showed decreased range of motion of the hips, mild lumbar tenderness, and intermittent hand symptoms, these records also routinely reflected normal range of motion of the hands and wrists with generally normal motor strength throughout (Tr. 47-50, 311, 315-317, 341-342, 344, 347-348, 418, 460). The ALJ also stated that the evidentiary record did not reflect a worsening in Plaintiff's condition, but, rather, improvement in symptoms with medications and treatment (Tr. 49; *see,* Tr. 318, 342, 347-350). Plaintiff testified at the hearing, as well as reported to treating physicians, that her hand and skin symptoms improved significantly with proper treatment (Tr. 48-49, 86-87, 314-315).

The ALJ also noted that x-rays of Plaintiff's right hand and right hip, performed in September, were normal (Tr. 286-287); October 2011 lab testing was normal (Tr. 316); October 2011 right hip x-rays showed a shallow socket, but were otherwise unremarkable (Tr. 316); March 2012 x-rays of the left foot and left ring finger were unremarkable (Tr. 357-358, 363-364); an April 2012 EMG of the left lower extremity was normal; and June 2012 x-rays of the lumbar spine and right hip were unremarkable, while left hip x-rays revealed only mild degenerative changes (Tr. 354-355, 359). These clinical and diagnostic findings undermined Plaintiff's complaints of incapacitating symptoms. *See, Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994).

The ALJ also reviewed Plaintiff's work history. Plaintiff worked at substantial gainful activity levels from the alleged onset date in September 2011 through December 2011, and at less than substantial gainful activity levels in January and February 2012 (Tr. 49, 244-246). The ALJ correctly determined that Plaintiff's ability to work at these levels supported a finding that her impairments did not preclude all work activity, and that she could continue working with appropriate accommodations, including additional considerations that might help avoid flare-ups (Tr. 49). Further, though she indicated some difficulty performing some aspects of the job, she testified that she stopped working because the job was "stressful," and not because she was unable to sustain the physical demands of the work (Tr. 81-83, 88).

The ALJ also considered other evidence in assessing Plaintiff's credibility. The ALJ considered that, despite Plaintiff's allegations of an inability to effectively use her hands for manipulative tasks and some activities of daily living, she retained sufficient manipulative ability to smoke six to ten cigarettes per day (Tr. 48, 95). The ALJ also noted the fact that Plaintiff lived independently with and cared for her three-year-old son, and that she regularly cleaned and organized her home (Tr. 46-47, 84-85). The ALJ also discussed Plaintiff's conservative course of treatment (Tr. 49-50). *See, Struchen v. Astrue*, No. 1:09CV2395, 2010 WL 3259895, at *4 (N.D. Ohio Aug. 17, 2010).

Finally, Plaintiff argues that the ALJ's credibility analysis is insufficient because he "failed to offer a unified statement explaining his credibility finding" (Pl. Br. 13). However, there is no requirement that the ALJ's credibility analysis be contained in a single statement. *See, Buckhanon ex rel. J.H. v. Astrue*, 368 F.App'x 674, 678-679 (7th Cir. 2010). The ALJ correctly considered all of the relevant evidence, and correctly concluded that substantial evidence supports his credibility assessment.

In summary, the ALJ determined that Plaintiff's allegations regarding the severity of her symptoms and the limiting effects of her impairments were not fully credible.  A court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Here, the ALJ reasonably found that Plaintiff's claims of disabling symptoms were not credible because they were not supported by objective medical record, her own reports, her response to treatment, and her work history.

## VIII.  CONCLUSION

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform jobs that exist in significant numbers in the national economy, and, therefore, was not disabled.  Hence, she is not entitled to DIB and SSI.


Dated: December 23, 2015                     */s/George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE